IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**RAYMOND MICHAEL SAUNDERS**                                                    **PLAINTIFF**

v.                                                      **CIVIL ACTION NO.: 1:21-cv-23-LG-MTP**

**KILOLO KIJAKAZI,**
*Commissioner of Social Security*                                                **DEFENDANT**

### REPORT AND RECOMMENDATION

Plaintiff Raymond Saunders brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security Administration denying his claim for disability insurance benefits and supplemental security income. Having considered the parties' submissions, the record, and the applicable law, the undersigned recommends that the Commissioner's final decision be AFFIRMED and this action be DISMISSED with prejudice.

### PROCEDURAL HISTORY

On December 1, 2017, 33-year-old Plaintiff applied for social security benefits alleging disability beginning on February 28, 2014, due to anxiety, "mental condition," and insomnia. (Administrative Record [7] at 225). After the agency denied Plaintiff's claim, an Administrative Law Judge ("ALJ") held a hearing. ([7] at 122-57). On July 8, 2019, the ALJ issued a decision finding that the severity of Plaintiff's impairments met the criteria of listing 12.06 and determined that Plaintiff was disabled. ([7] at 248-57).

Upon automatic review, the Appeals Council found that there were insufficient objective treatment records to evaluate Plaintiff's mental status during the relevant time period and that substantial evidence did "not support the finding that [Plaintiff's] impairment met the criteria of

1

Listing 12.06" on September 30, 2015, the day Plaintiff's insured status expired.[1] ([7] at 76-83). ([7] at 79). The Appeals Council remanded the matter for "[f]urther evaluation at step three of the sequential evaluation process…." ([7] at 80). The Appeals Council also found that the ALJ should provide further consideration regarding Plaintiff's substance use disorder as the record documented Plaintiff's ongoing use of marijuana. ([7] at 80). On remand, the Appeals Council instructed the ALJ to:

> [o]btain, if available, updated evidence from [Plaintiff's] treating sources, including the treatment records of Dr. Zakaras and Mr. Burroughs, that is relevant to the two periods at issue in [Plaintiff's] Title II and Title XVI claims; obtain evidence from a medical expert, preferably a psychiatrist or psychologist, to clarify the nature, severity, limiting effects and, as appropriate, onset date of [Plaintiff's] impairments; further evaluate the opinion evidence of record; further consider whether [Plaintiff has] an impairment(s) that meets or medically equals the criteria of a listed impairment, and address the express request for reopening.

([7] at 81).

On August 14, 2020, the ALJ held another hearing. At this second hearing, the ALJ had licensed psychologist Dr. Cheryl Buechner provide her opinion of Plaintiff's mental impairments based on his medical records. ([7] at 166, 561). On September 2, 2020, the ALJ issued a finding that Plaintiff was not disabled. ([7] at 28-43). On November 17, 2020, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. ([7] at 14-16). Plaintiff now seeks judicial review in this Court under 42 U.S.C. § 405(g).

---

[1] Plaintiff previously applied for social security benefits, but an ALJ found that Plaintiff was not disabled through February 27, 2014. ([7] at 181-91). Plaintiff's instant application alleges an onset date of February 28, 2014. ([7] at 333). Plaintiff's "insured status" expired on September 30, 2015. Therefore, Plaintiff was required to show that he was disabled on or before that date in order to be entitled to a period of disability and disability insurance benefits. ([7] at 29).

## ADMINISTRATIVE LAW JUDGE'S SEPTEMBER 2, 2020 DECISION

In his September 2, 2020 decision, the ALJ applied the five-step sequential analysis set forth in 20 C.F.R. § 404.1520(b)-(f)[2] and determined that Plaintiff was not disabled. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since February 28, 2014, the alleged onset date. ([7] at 31). At step two, the ALJ found Plaintiff had the following medically determinable impairments: anxiety disorder, autism spectrum disorder, and poly-substance abuse.[3] At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 04, Subpart P, Appendix 1. ([7] at 32-34).

The ALJ then examined the record and determined that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, except with the following limitations:

---

[2] This analysis requires the ALJ to make the following determinations:
   (1) whether the claimant is presently engaging in substantial gainful activity (is so, a finding of "not disabled" is made);
   (2) whether the claimant has a severe impairment (if not, a finding of "not disabled" is made);
   (3) whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Part 404, Subpart P, Appendix 1 (is so, then the claimant is found to be disabled);
   (4) whether the impairment prevents the claimant from doing past relevant work (if not, a finding of "not disabled" is made);
   (5) whether the impairment prevents the claimant from performing any other substantial gainful activity (is so, the claimant is found to be disabled).
See 20 C.F.R. §§ 404.1520, 416.92.  The burden of proof rests upon the claimant throughout the first four steps; if the claimant is successful in sustaining his burden through step four, the burden then shifts to the Commissioner at step five. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

[3] The ALJ applied the standard set forth in *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985) and found that Plaintiff's poly-substance abuse was a non-severe impairment as the medical evidence indicated it is now in remission. The ALJ also found that Plaintiff did not experience a medically determinable impairment of depression or bipolar disorder. ([7] at 32).

> [h]e can understand and remember simple, routine tasks and sustain these tasks for two hours at a time throughout an eight-hour workday. He should not work in positions that involve interaction with the public or work in hospitality or medical fields. He can tolerate occasional interaction with coworkers and supervisors. He can tolerate occasional workplace changes.

([7] at 34). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. ([7] at 41). At step five, however, the ALJ found that jobs existed in significant numbers in the national economy which Plaintiff could perform. ([7] at 42). Accordingly, the ALJ found that Plaintiff was not disabled. ([7] at 42).

This Court's review of the Commissioner's decision is limited to determining whether there is substantial evidence to support the Commissioner's findings and whether the correct legal standards were applied in evaluating the evidence. *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler,* 707 F.2d 162, 164 (5th Cir. 1983). To be substantial, the evidence "must do more than create a suspicion of the existence of the fact to be established." *Id*. (citations omitted).

However, "[a] finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (internal citations and quotations omitted). Conflicts in the evidence are for the Commissioner, not the courts, to resolve. *Selders v. Sullivan,* 914 F.2d 614, 617 (5th Cir. 1990). A court may not re-weigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, "even if the evidence preponderates against" the Commissioner's decision. *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988). If the decision is supported by substantial evidence, it is conclusive and must be affirmed. *Selders,* 914 F.2d at 617. Moreover,

"'[p]rocedural perfection in administrative proceedings is not required' as long as 'the substantial rights of a party have not been affected.'" *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988)).

## ANALYSIS

Plaintiff argues that the ALJ's determination that Plaintiff did not meet or medically equal Listing 12.06 (anxiety and obsessive-compulsive disorders) or 12.10 (autism spectrum disorder) is not supported by substantial evidence. Plaintiff claims that the ALJ failed to properly evaluate the opinions of Dr. Zakaras, Dr. Barrilleaux, Dr. Romero, and APRN Burroughs,[4] and that if their opinions were properly evaluated, Plaintiff would have been found to be disabled. ([9] at 1).

At step three of the sequential analysis, the ALJ applies the Social Security Administration's Listing of Impairments, which "describes for each of the major body systems impairments that [SSA] consider to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 1525(a).  The criteria in the Listings are "demanding and stringent." *Falco*, 27 F.3d at 162.  "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

An ALJ is required to discuss the evidence offered in support of a disability claim and to explain why a claimant is not disabled. *See Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). At step three, an "ALJ should identify the listed impairment for which the claimant's symptoms fail to qualify and provide an explanation as to how he or she determined that the symptoms are

---

[4] APRN stands for "advanced practice registered nurse." According to his letterhead, Ralph Burroughs is a psychiatric nurse practitioner.  ([7] at 512).

5

insufficiently severe to meet any listed impairment.  A bare and summary conclusion that a plaintiff does not meet the criteria of any Listing is beyond meaningful judicial review." *Savoie v. Colvin*, 2015 WL 1004217, at *5 (M.D. La. Mar. 5, 2015) (citing *Audler*, 501 F.3d at 448).

Listing 12.06 is for anxiety and obsessive-compulsive disorders, and listing 12.10 is for autism spectrum disorder. For either of these listings to be met, an applicant must demonstrate limitations commonly referred to as the "paragraph B" criteria.  These limitations include (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt and manage oneself.  20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.06(B), 12.10(B).  "To satisfy the paragraph B criteria, [the] mental disorder must result in 'extreme' limitation of one, or 'marked' limitation of two, of the four areas of mental functioning."  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(2)(b).

Here, the ALJ found that Plaintiff had a mild limitation in understanding, remembering, and applying information; a moderate limitation in interacting with others; a mild limitation in concentrating, persisting, and maintaining pace; and a moderate limitation in adapting or managing oneself. ([7] at 32-34). Because the ALJ found that Plaintiff's mental impairments "do not cause at least two 'marked' limitations or one 'extreme' limitation," the ALJ determined that Plaintiff did not meet the requirements of either listing.

While there are four paragraph B criteria, Plaintiff limits his argument to two. Plaintiff argues that the ALJ should have found that Plaintiff had a "marked" limitation in both "interacting with others" and "concentrating, persisting, and maintaining pace." ([9] at 27- 29).

In finding that Plaintiff had a moderate limitation in "interacting with others" the ALJ noted that the Plaintiff was "able to subdue any feelings of anxiety sufficiently to appear at the hearing." ([7] at 33). He observed that the Plaintiff demonstrated adequate social and

communication skills, that he was courteous and polite, that he maintained good eye contact, and that he exhibited a normal appearance. ([7] at 33). The ALJ found that treating sources did not note any failure to cooperate by Plaintiff and that they seemed to rely on him to report his symptoms and complaints. The ALJ likewise discussed Plaintiff's lack of inclination towards violence, and that there is no evidence of arrests or police involvement "for untoward social behavior during the time period adjudicated." ([7] at 33). The medical examiner found that Plaintiff had moderate limitation for this criterion based upon her review of the objective medical evidence. ([7] at 168).

Additional evidence supports the ALJ's finding. Plaintiff testified at the June 12, 2019, hearing that he runs a lawn care business with his friend Andre Armstrong called Dre and Ray's Lawn and Landscaping. ([7] at 130-31).[5] Plaintiff testified that he markets the business on Facebook and through word-of-mouth. Plaintiff also testified that he buys the marijuana he smokes from friends or social acquaintances. ([7] at 141). These activities require interacting with others and support the ALJ's finding that Plaintiff experiences only a moderate limitation in this area.

Plaintiff also argues that the ALJ erred by finding that Plaintiff had a mild limitation in "concentrating, persisting, or maintaining pace." ([9] at 29). The ALJ observed that Plaintiff was able to concentrate sufficiently throughout the hearing, that he responded appropriately to all questions, and that he did not display behavior suggesting he was distracted. Plaintiff was regularly noted as normally oriented, with adequate memory and judgment. ([7] at 33). The ALJ found that Plaintiff's medical evidence did not reveal any instances where Plaintiff disrupted his home life, and that he had consistently lived with family without being asked to leave. The ALJ

---

[5] Plaintiff's father claims that Plaintiff only does odd jobs for neighbors. ([7] at 521).

inferred that disruptive behavior would likely not appear in a work-setting either. ([7] at 33). The ALJ noted that treating sources appeared to trust Plaintiff's presentation of his history and symptoms, and that this would not occur if they suspected "significant deficits in concentration or mental status." The ALJ noted that Plaintiff seems compliant with medical treatment, which would be unlikely if he was unable to "concentrate sufficiently to understand and carry out medical instructions." ([7] at 33).

Additional evidence supports the ALJ's finding. Plaintiff testified that he has a driver's license and drives a car. ([7] at 128). The record also indicates that he plays video games and reads books on landscaping. ([7] at 153, 517). These activities require the ability to concentrate, persist, and maintain pace and support the ALJ's finding that Plaintiff has only a mild limitation in this area.

In its decision to remand this matter to the ALJ to make additional findings, the Appeals Council noted that "the objective medical evidence has never documented significant deficits in your attention, concentration, memory, thought processes/content, or cognition that are consistent with marked limitations in the paragraph B criteria of concentrating, persisting, or maintaining pace." ([7] at 80). The medical expert stated during the second hearing that Plaintiff had a mild limitation for this criterion based on a review of the objective medial evidence in the record. ([7] at 168-69).

Plaintiff argues that medical evidence in the record shows that his mental impairments would cause more severe limitations for these two paragraph B criteria, and that the ALJ erred by not finding at least a marked limitation. Plaintiff bases his argument primarily on the ALJ's statements that he found the opinions of Dr. Zakaras, Dr. Barrilleaux, Dr. Romero, and APRN Burroughs unpersuasive.

In 2017, the Social Security Administration revised its regulations regarding the evaluation of medical evidence. These revised regulations are applicable to claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520b. Because Plaintiff's claim was filed after March 27, 2017, the Court applies the revised regulations.

Under the revised regulations, an ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinions," including those from treating medical sources. *See* 20 C.F.R. § 404.1520c(a). Instead, an ALJ must evaluate the "persuasiveness" of medical opinions by utilizing five factors: supportability, consistency, relationship with the claimant, specialization, and other factors.[6] *See* 20 C.F.R. § 404.1520c(c). The most important factors are supportability and consistency. *See* 20 C.F.R. § 404.1520c(b)(2). An ALJ is required to explain how he considered the supportability and consistency factors, but need not explain how he considered the other factors in determining the persuasiveness of the medical opinion. *See* 20 C.F.R. § 404.1520c(b)(2).

Dr. Michael Zakaras states in a two-page summary that he has seen Plaintiff on a weekly basis since July of 2012. ([7] at 550). Despite this statement, there are no records submitted by Plaintiff to support this. After Plaintiff's claim was sent back to the ALJ, Plaintiff submitted "progress notes" from Dr. Zakaras. However, these notes are mostly illegible, consist of a single line of writing, and are dated from July of 2012 to November of 2013. ([7] at 610-14). The ALJ reviewed these documents and found Dr. Zakaras's opinion unpersuasive as he "did not submit any progress notes from the relevant period in support of his opinion" and that his opinion was "not consistent with the conservative care and benign mental status findings in the record as a

---

[6] Other factors include, but are not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability programs, policies and evidentiary requirements." *See* 20 C.F.R. § 404.1520c(c)(5).

whole." ([7] at 40). Fifth Circuit law is clear that statements by physicians, even a claimant's treating physician, that are "brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence" may be discounted or rejected. *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001). The ALJ considered the appropriate factors in determining the persuasiveness of Dr. Zakaras's opinion, and his finding is supported by substantial evidence.

Dr. Steve Barrilleaux conducted a comprehensive mental status evaluation of Plaintiff on May 1, 2018. The ALJ reviewed this evaluation and found that Dr. Barrilleaux's conclusion that Plaintiff's psychological impairments "would severely interfere with his ability to perform and complete work related behaviors effectively" was not supported by his own findings contained in the same report. ([7] at 40, 515-18).

Dr. Barrilleaux noted that Plaintiff appeared tense and anxious, but that his speech was fluent and goal-directed with a normal rate, rhythm, and volume. ([7] at 517). He observed that Plaintiff was alert and responsive to questions, and that his thought processes "appeared logical and well-connected with no evidence of delusions or hallucinations." ([7] at 517). He found Plaintiff's long-term memory was good, his immediate recall was good, and he exhibited a "fair" level of delayed recall. He found that Plaintiff's judgment for hypothetical problems was "fair," that his insight was "fair," and that Plaintiff's overall intelligence was in "normal" range. ([7] at 518).

As summarized by the ALJ, other than finding that Plaintiff had "poor abstract reasoning ability," Dr. Barrilleaux's examination of Plaintiff's mental status was "otherwise unremarkable." ([7] at 40). The ALJ further found that the conservative care of Plaintiff's mental impairments and relatively benign mental status findings in the record, did not support Dr.

Barrilleaux's opinion that his mental impairments would "severely" interfere with his ability to work. The ALJ explained how he considered the supportability and consistency factors, and his finding is supported by substantial evidence.

Plaintiff also argues that the ALJ erred by finding that Dr. Maryellen Romero's progress note was unpersuasive. ([9] at 18). On March 18, 2019, Dr. Romero examined Plaintiff. This appears to be a one-time visit for "neuropsychological evaluation." ([7] at 521-26). The ALJ considered this opinion, but found that it was unpersuasive as "it appears to be for the most part, based upon subjective reporting rather than objective findings." ([7] at 40). The ALJ also found that Dr. Romero's finding was inconsistent with the conservative care and benign mental status findings in the record. ([7] at 40).

During the hearing, licensed psychologist Dr. Cheryl Buechner testified that she reviewed Dr. Romero's assessment of Plaintiff. ([7] at 169, 172). Dr. Buechner found that Plaintiff did not meet the listing requirements. She stated that Dr. Romero's diagnosis of Plaintiff with "level 1" autism spectrum disorder was "essentially evidence of difficulty and/or inflexibility in interactions." ([7] at 40).

Plaintiff's father reported to Dr. Romero that his son "always" experienced significant social limitations. ([7] at 147, 522, 40). However, the ALJ found that these limitations were not supported by the objective evidence of record. The ALJ found it significant that Plaintiff was able to complete an associate's degree and that he was only 17 credits away from finishing a bachelor's degree in geographic information systems at the University of Southern Mississippi. ([7] at 40, 521, 564). He also noted that Plaintiff worked at a fitness center for 10-years. ([7] at 40). The ALJ reviewed Dr. Romero's opinion along with Dr. Buechner's opinion, evaluated the

11

supportability and consistency factors with the rest of the medical records, and his findings are supported by substantial evidence.

The ALJ also found that the opinion of APRN Ralph Burroughs was not persuasive. Plaintiff argues that this is error. However, again, the ALJ analyzed the appropriate factors and found that his opinion was not supported by the record. ([7] at 39). The ALJ noted that while medication reports indicated that APRN Burroughs treated Plaintiff from August of 2015 to December of 2019, only two progress notes were submitted.

The first progress note appears to be from Plaintiff's initial visit in August of 2015. APRN Burroughs's notes from this initial visit observed that Plaintiff was calm and cooperative during the interview, that his speech was normal, he displayed normal mood, and his concentration was good. ([7] at 548). He also found Plaintiff's thought process to be "linear and goal directed," observed that he exhibited good insight and good judgment, and that both his long and short-term memory was intact. APRN Burroughs found that Plaintiff's overall cognition was good, with no obvious deficits. ([7] at 548). The result of the visit was Plaintiff being prescribed the same medication regimen as he was prescribed going into the appointment. ([7] at 548-49).

The second progress note is from June 3, 2019, and appears to be a summary by APRN Burroughs of his treatment of Plaintiff up until that date. ([7] at 545). It includes no observations of Plaintiff's mental state at the time of the appointment. He also states that he made no change to Plaintiff's medications during this appointment. As previously stated, the ALJ may reject opinions that are "brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence." *Myers*, 238 F.3d at 621. The ALJ's finding is supported by substantial evidence.

The ALJ properly discounted the opinions of the physicians and provided his reasoning. The law is clear that the ALJ has the sole responsibility of determining a claimant's disability status and is free to reject the opinion of any physician when the evidence supports a contrary conclusion. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). The ALJ considered Plaintiff's subjective complaints, medical records, and the medical opinions of record. Additionally, as previously mentioned, it is a claimant's burden at step three to demonstrate an impairment or combination of impairments that meets or equals the requirements of a listing. *Whitehead*, 820 F.3d at 776. Plaintiff failed to demonstrate that he met the paragraph B criteria, and the ALJ's decision is supported by substantial evidence and comports with applicable law.

The Court recognizes that there is some evidence of record which supports Plaintiff's claims. This Court, however, does not resolve conflicts in the evidence; that is left to the discretion of the Commissioner. *Selders*, 914 F.2d at 617.

Plaintiff also briefly argues that even if Plaintiff was not found to meet a listing, that the ALJ erred by finding that he was not disabled. ([9] at 30-32). However, Plaintiff bases this argument entirely on the opinions of Dr. Zakaras, Dr. Barrilleaux, Dr. Romero, and APRN Burroughs. The ALJ found their opinions to be unpersuasive for the reasons previously stated, and his reasons are supported by substantial evidence.

## CONCLUSIONS AND RECOMMENDATIONS

Based on the foregoing, the undersigned finds that the Commissioner's decision is supported by substantial evidence and that no reversible error of law was committed by the ALJ. Accordingly, the undersigned recommends that the Commissioner's final decision be AFFIRMED, and this action be DISMISSED with prejudice.

**NOTICE OF RIGHT TO OBJECT**

In accordance with the Rules of this Court, any party, within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the District Judge, the U.S. Magistrate Judge, and the opposing party. The District Judge at that time may accept, reject or modify in whole or in part, the recommendation of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. Failure to timely file written objections to proposed findings, conclusions, and recommendations contained in this report will bar an aggrieved party, except on the grounds of plain error, from attacking on appeal unobjected to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

This 14th day of July, 2022.

s/ Michael T. Parker<br>United States Magistrate Judge